1    PAUL T. FRIEDMAN (BAR NO. 98381)
     PFriedman@mofo.com
2    STACEY M. SPRENKEL (BAR NO. 241689)
     SSprenkel@mofo.com
3    CAITLIN SINCLAIRE BLYTHE (BAR NO. 265024)
     CBlythe@mofo.com
4    MORRISON & FOERSTER LLP
     425 Market Street
5    San Francisco, California  94105-2482
     Telephone: 415.268.7000
6
     GREGORY B. KOLTUN (BAR NO. 130454)
7    GKoltun@mofo.com
     MORRISON & FOERSTER LLP
8    707 Wilshire Boulevard
     Los Angeles, California  90017-3543
9    Telephone: 213.892.5200

10   Attorneys for Defendant
     UNITED PARCEL SERVICE, INC.
11

12                        UNITED STATES DISTRICT COURT

13                     NORTHERN DISTRICT OF CALIFORNIA

14                          SAN FRANCISCO DIVISION

15

16   RANDALL HOLL,                        Case No. 16-cv-05856-HSG

17               Plaintiff,               **DEFENDANT UNITED PARCEL
                                          SERVICE, INC.'S REPLY IN SUPPORT
18        v.                              OF MOTION TO COMPEL
                                          ARBITRATION AND STAY
19   UNITED PARCEL SERVICE, INC.,         PROCEEDINGS**

20               Defendant.               Date:      February 16, 2017
                                          Time:      2:00 p.m.
21                                        Courtroom: 10
                                          Judge:     Honorable Haywood S. Gilliam, Jr.
22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................................... 1

I.   PLAINTIFF IS BOUND BY THE ARBITRATION PROVISION IN THE UPS
     TERMS ........................................................................................................... 2

     A.   Plaintiff Does Not Contest That the FAA Requires Arbitration of His
          Claims If the Claims Fall Within a Valid and Enforceable Agreement to
          Arbitrate ................................................................................................ 2

     B.   Plaintiff Entered into a Valid, Enforceable Arbitration Agreement When
          Enrolling in UPS My Choice Service ........................................................ 2

          1.   Plaintiff Does Not Refute That He Had to Click "I Agree" to the
               UPS Terms to Become a UPS My Choice Member ............................. 3

          2.   Plaintiff Cannot Refute That Clickwrap Agreements Requiring
               Assent to Applicable Terms Are Enforceable ................................. 4

          3.   Plaintiff Relies on Inapplicable Standards .................................... 5

               a.   The Requirement for "Conspicuous" and "Plain and Clear"
                    Terms Applies Only to Insurance Contracts ........................ 5

               b.   There Is No Obligation to Affirmatively Bring an
                    Arbitration Provision to a Consumer's Attention or Explain
                    It ....................................................................................... 8

     C.   Plaintiff Fails to Refute That, in Addition to His Direct Agreement, He Is
          Required to Arbitrate Through Principles of Equitable Estoppel ................ 10

II.  PLAINTIFF FAILS TO REFUTE THAT HIS CLAIMS ARE WITHIN THE
     SCOPE OF THE ARBITRATION AGREEMENT IN THE UPS TERMS .................... 13

III. THE COURT SHOULD COMPEL ARBITRATION AND STAY THE
     PROCEEDINGS ............................................................................................. 15

CONCLUSION ........................................................................................................... 15

# TABLE OF AUTHORITIES

Page

**Cases**

*ARW Expl. Corp. v. Aguirre*,
45 F.3d 1455 (10th Cir. 1995)..................................................................................14

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ..................................................................................................14

*Berkson v. Gogo LLC*,
97 F. Supp. 3d 359 (E.D.N.Y. 2015)..........................................................................4

*Bruni v. Didion*
160 Cal. App. 4th 1272, 1291 (2008) .......................................................................10

*Buchla v. Buchla Elec. Musical Instrument, LLC*,
No. 15-cv-0921-HSG, 2015 WL 4463695 (N.D. Cal. July 21, 2015) .....................15

*Chan v. Drexel Burnham Lambert*,
178 Cal. App. 3d 632 (1986)......................................................................................7

*Chico v. Hilton Worldwide, Inc.*,
No. CV-14-5750-JFW, 2014 WL 5088240 (C.D. Cal. Oct. 7, 2014) ........................9

*City of Riverside v. Mitsubishi Heavy Indus., LTD*,
No. 13-CV-1724-BEN (KSC), 2014 WL 1028835 (S.D. Cal. Mar. 14, 2014)..........13

*Crowley Maritime Corp. v. Boston Old Colony Ins. Co.*,
158 Cal. App. 4th 1061 (2008) .................................................................................12

*DMS Servs., Inc. v. Superior Court*,
205 Cal. App. 4th 1346 (2012) .................................................................................12

*Dominguez v. Fin. Indem. Co.*,
183 Cal. App. 4th 388 (2010) .....................................................................................6

*Goldman v. KPMG LLP*,
173 Cal. App. 4th 209 (2009) ...................................................................................12

*Han v. Samsung Telecomms. Am., LLC*,
No. CV-13-3823 GW, 2013 WL 7158044 (C.D. Cal. Dec. 16, 2013).......................9

*Haynes v. Farmers Ins. Exch.*,
32 Cal. 4th 1198 (2004) ..............................................................................................6

*JSM Tuscany v. Superior Court*,
193 Cal. App. 4th 1222 (2011) ...............................................................1, 11, 12, 13

*Kesel v. United Parcel Serv., Inc.*,
339 F.3d 849 (9th Cir. 2003)...............................................................................11

*Knutson v. Sirius XM Radio Inc.*,
771 F.3d 559 (9th Cir. 2014)...........................................................................9, 14

*Koffler Elec. Mech. Apparatus Repair, Inc. v. Wärtsilä North Am., Inc.*,
No. C-11-0052 EMC, 2011 WL 1086035 (N.D. Cal. Mar. 24, 2011).......................9

*Lucas v. Hertz Corp.*,
875 F. Supp. 2d 991 (N.D. Cal. 2012) ....................................................................8

*McIntosh v. Adventist Health/W. St. Helena Hosp.*,
No. C 12-05589 PJH, 2013 WL 968293 (N.D. Cal. Mar. 12, 2013) .......................15

*Meyer v. Kalanick*,
No. 15 Civ. 9796, 2016 WL 4073012 (S.D.N.Y. July 29, 2016)...............................4

*Moule v. United Parcel Serv. Co.*,
No. 1:16-cv-00102-JLT, 2016 WL 3648961 (E.D. Cal. July 7, 2016) ......................9

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014)................................................................................4

*Pastor v. State Farm Mut. Auto. Ins. Co.*,
487 F.3d 1042 (7th Cir. 2007)................................................................................8

*Sanchez v. Valencia Holding Co., LLC*,
61 Cal. 4th 899 (2015) ....................................................................................8, 10

*Sivak v. United Parcel Serv. Co.*,
28 F. Supp. 3d 701 (E.D. Mich. 2014) ..................................................................11

*Specht v. Netscape Commc'ns Corp.*,
306 F.3d 17 (2d Cir. 2002).........................................................................4, 5, 10

*Swift v. Zynga Game Network, Inc.*,
805 F. Supp. 2d 904 (N.D. Cal. 2011) ..................................................................10

*Tamsco Props., LLC v. Langemeier*,
No. 2:09-cv-03086-GEB-EFB, 2013 WL 246782 (E.D. Cal. Jan. 22, 2013) ..........12

*Tompkins v. 23andMe, Inc.*,
No. 5:13-CV-05682-LHK, 2014 WL 2903752 (N.D. Cal. June 25, 2014) ..........4, 10

*Wallis v. Princess Cruises, Inc.*,
    306 F.3d 827 (9th Cir. 2002)........................................................................5

*Windsor Mills, Inc. v. Collins & Aikman Corp.*,
    25 Cal. App. 3d 987 (1972).......................................................................10

*Wolschlager v. Fidelity Nat'l Title Ins. Co.*,
    111 Cal. App. 4th 784 (2003) .....................................................................8

*Xinhua Holdings Ltd. v. Elec. Recyclers Int'l, Inc.*,
    No. 1:13-CV-1409 AWI SKO, 2013 WL 6844270 (E.D. Cal. Dec. 26, 2013) ........................12

*Youssofi v. Wells Fargo Bank*,
    No. 16cv1330-MMA (JMA), 2016 WL 7404522 (S.D. Cal. Dec. 21, 2016) ...........................9

**INTRODUCTION**

When Plaintiff enrolled in the UPS My Choice service, he was affirmatively notified that contract terms applied and he clicked "I agree" to those terms. When he clicked "I agree," Plaintiff "expressly acknowledge[d] having reviewed, understood and agreed to the UPS Tariff/Terms and Conditions of Service" ("UPS Terms"), which include an arbitration provision. Courts uniformly hold that such internet agreements, often referred to as "clickwrap" agreements, are enforceable, including as to arbitration requirements. Plaintiff does not cite a *single case* holding such agreements unenforceable. Plaintiff relies on inapposite standards, cobbled together from various inapplicable legal doctrines, to manufacture contract formation requirements that simply do not exist. None of Plaintiff's proffered standards undermines either the enforceability of the internet agreement at issue or the arbitration provision that it incorporated by reference.

Equitable estoppel provides an independent and alternative basis to compel arbitration, based on the shipping contract between UPS and The UPS Store location that shipped Plaintiff's package on his behalf. That shipping contract incorporates the UPS Terms (including its arbitration provision) as well as the UPS Rate and Service Guide ("UPS Guide"), which contains the pricing terms that Plaintiff alleges UPS failed to honor. The leading California case, *JSM Tuscany v. Superior Court*, 193 Cal. App. 4th 1222 (2011), holds that a non-signatory to a contract must arbitrate claims that are based upon or inextricably intertwined with the terms of a contract containing an arbitration provision. Plaintiff's claims are just that, as they seek to hold UPS liable for allegedly charging more than allowed by the shipping contract. Numerous courts have followed *JSM Tuscany* to require arbitration of statutory and equitable claims that relied, as Plaintiff's do, on the terms of a contract with an arbitration provision. This Court should do the same.

Plaintiff's claims, which challenge UPS's shipping charges, fall squarely within the scope of the arbitration provision in the UPS Terms, which requires arbitration of "any" dispute "arising out of or related to the provision of services by UPS." Plaintiff's attempt to narrow the scope of the provision in the clickwrap agreement to disputes relating solely to the UPS My Choice service cannot be squared with the provision's plain and unambiguous language.

In arbitration, Plaintiff can pursue all of his claims and obtain the same relief he seeks here. He does not challenge any of the procedures set forth in the arbitration provision and they are eminently fair. He will not have to pay, for example, arbitration filing fees that exceed the costs to file his suit in court. In all likelihood, this dispute can be resolved far more quickly in arbitration and for less expense than it could be if it remains before this Court. For all of these reasons, the Court should compel arbitration and stay the proceedings so that Plaintiff may arbitrate his claims on an individual basis, as he agreed to do.

## I.     PLAINTIFF IS BOUND BY THE ARBITRATION PROVISION IN THE UPS TERMS

### A.     Plaintiff Does Not Contest That the FAA Requires Arbitration of His Claims If the Claims Fall Within a Valid and Enforceable Agreement to Arbitrate

Plaintiff does not contest that the FAA applies to all of his claims. (Def.'s Mot. at 9-10.) Accordingly, this Court must compel arbitration if it concludes that Plaintiff is bound by a valid, enforceable agreement to arbitrate and that his claims fall within the scope of that agreement. (*Id.* at 10.) Both criteria are met here.

### B.     Plaintiff Entered into a Valid, Enforceable Arbitration Agreement When Enrolling in UPS My Choice Service

UPS showed that Plaintiff entered into a valid, enforceable agreement to arbitrate under California law when he enrolled in the UPS My Choice service online because enrollment required him to check a box acknowledging that he agreed to the UPS My Choice Service Terms. By agreeing to those Terms, he "expressly acknowledge[d] having reviewed, understood, and agreed to the UPS Tariff/Terms and Conditions of Service," which require arbitration of claims arising from or relating to UPS services. (Decl. of Christine Calderon in Supp. of Def.'s Mot. to Compel Arbitration ("Calderon Decl.") Ex. A ¶ 1, Dec. 19, 2016, EFC No. 23-7; Def.'s Mot. at 11-13.) UPS cited multiple cases holding that an internet user entered into a valid arbitration agreement under California law where the user was affirmatively notified of contractual terms, and manifested assent to those terms by clicking "I Agree," on interfaces similar to the UPS My

Choice interface (often referred to by courts as "clickwrap" agreements). (Def.'s Mot. at 11-12.)[1]

Plaintiff does not dispute that the UPS My Choice Service Terms clearly state that by agreeing to be bound by those terms, a user "expressly acknowledge[s] having reviewed, understood and agreed to the UPS Tariff/Terms and Conditions of Service." (Calderon Decl. Ex. A ¶ 1.) Nor does he dispute that the UPS Terms require arbitration of any claim "arising out of or related to the provision of services by UPS." (Def.'s Mot. at 15-16; Decl. of Kenneth M. Liberatore in Supp. of Def.'s Mot. to Compel Arbitration ("Liberatore Decl.") Ex. A § 52, Dec. 19, 2016, EFC No. 23-4.) Plaintiff's arguments seeking to avoid enforcement of the arbitration agreement he entered into are all unavailing.

### 1. Plaintiff Does Not Refute That He Had to Click "I Agree" to the UPS Terms to Become a UPS My Choice Member

Despite his claim not to recall signing up for the service, Plaintiff acknowledges that he "reviewed [his] emails and saw an email from UPS indicating that [he] did in fact sign up for UPS's My Choice Service on April 20, 2015." (Randoll Holl Decl. in Opp'n to Mot. to Compel Arbitration ¶ 2, Jan. 18, 2017, ECF No. 29.)

Plaintiff does not dispute that in order to become a UPS My Choice member, a user must click to assent to the UPS My Choice Service Terms. He does not dispute that he was presented with a checkbox conspicuously placed just above the "Continue" button on the UPS My Choice enrollment screen, informing him that by clicking the checkbox he was agreeing to be bound by the UPS My Choice Service Terms. He does not deny that he did, in fact, click "I agree" when presented with that checkbox (as is required in order to be able to click continue and enroll). While Plaintiff contends that "UPS offers no evidence that Plaintiff *actually agreed* to the UPS My Choice Service Terms" (Pl.'s Opp'n at 20), it is well settled that a party's access to a service or website that requires an indication of assent to terms before access is granted is "sufficient

---

[1] It is undisputed that the Court may apply California law to determine whether Plaintiff entered into a valid arbitration agreement because state law governs and there is no difference between California and New York law on this issue. (Def.'s Mot. at 10 & n.5; Pl.'s Opp'n at 7 n.3.) Plaintiff purports to agree with UPS that federal common law also is the same as California and New York law regarding contract formation and interpretation (Pl.'s Opp'n at 7 n.3) but UPS did not rely on federal common law on those issues.

evidence that the user clicked 'I Accept.'" *Tompkins v. 23andMe, Inc.*, No. 5:13-CV-05682-LHK, 2014 WL 2903752, at \*7 (N.D. Cal. June 25, 2014), *aff'd*, 840 F.3d 1016 (9th Cir. 2016).

### 2. Plaintiff Cannot Refute That Clickwrap Agreements Requiring Assent to Applicable Terms Are Enforceable

Plaintiff does not address any of UPS's cited authority upholding the enforceability of "clickwrap" agreements that require a user to affirmatively click to indicate assent to applicable terms. And the cases that Plaintiff does cite addressing internet agreements recognize that clickwrap agreements *are* enforceable. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014) (courts have found "the requisite notice for constructive assent where . . . the user is required to affirmatively acknowledge the agreement before proceeding with use of the website"); *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 397 (E.D.N.Y. 2015) ("almost every [lower] court to consider the issue has found 'clickwrap' licenses, in which an online user clicks 'I agree' to standard form terms, enforceable") (internal quotation marks omitted); *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 22 n.4 (2d Cir. 2002) (noting that courts have held that "clicking on a webpage's clickwrap button after receiving notice of the existence of license terms . . . manifest[s] an Internet user's assent to terms"); *Meyer v. Kalanick*, No. 15 Civ. 9796, 2016 WL 4073012, at \*6 (S.D.N.Y. July 29, 2016) ("'Clickwrap' agreements are more readily enforceable, since they permit courts to infer that the user was at least on inquiry notice of the terms of the agreement, and has outwardly manifested consent by clicking a box."). Indeed, the courts in Plaintiff's cited cases held the agreements at issue were not enforceable precisely because they were *not* clickwrap agreements and did *not* offer a mechanism requiring users to affirmatively click to indicate their assent to the applicable terms.[2]

---

[2] *See Meyer*, 2016 WL 4073012, at \*8 (declining to find electronic agreement was formed, noting "[m]ost obviously, Uber riders need not click on any box stating 'I agree' in order to proceed to use the Uber app—a feature that courts have repeatedly made note of in declining to find that an electronic contract was formed."); *Nguyen*, 763 F.3d at 1178-79 (distinguishing clickwrap from browsewrap agreements and finding no constructive notice that applicable terms applied where website "provides no notice to users nor prompts them to take any affirmative action [i.e. click 'I agree'] to demonstrate assent."); *Berkson*, 97 F. Supp. 3d at 403-04 (merely clicking "Sign In" where the "design and content of the website . . . did not make the 'terms of use' readily and obviously available" was insufficient to manifest assent); *Specht*, 306 F.3d at 31 (holding that contractual nature was not obvious where "Plaintiffs were responding to an offer

(Footnote continues on next page.)

Tellingly, Plaintiff does not cite to a single case where a court held an agreement like the one on the UPS My Choice website, which calls a user's attention to applicable terms and requires the user to click "I agree," was unenforceable. Courts routinely enforce such contracts.

### 3. Plaintiff Relies on Inapplicable Standards

Unable to counter on-point authority upholding the enforceability of terms agreed to via clickwrap agreements, Plaintiff invokes various standards that he contends govern adhesion contracts. (Pl.'s Opp'n at 7-11.) None of the proffered standards undermine the enforceability of the clickwrap agreement at issue.

Plaintiff contends that courts assessing adhesion contracts apply factors "known as the standard of 'reasonable communicativeness.'" (*Id.* at 9.) The only cases Plaintiff cites that actually applied a "reasonable communicativeness test" determined whether a party was bound by the contractual language on a passenger ticket under maritime or federal common law.[3] *See, e.g.*, *Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 835 (9th Cir. 2002). Those cases plainly are inapposite. Plaintiff's own cited authority recognizes that the "determination of whether parties have contractually bound themselves to arbitrate a dispute [is] a determination involving interpretation of state law"—not maritime or federal common law. *Specht*, 306 F.3d at 26.

Nor do the factors that Plaintiff contends comprise the "reasonable communicativeness" standard—that terms must be "conspicuous" and "plain and clear" and arbitration provisions be brought to a customer's attention and explained—support his position. (Pl.'s Opp'n at 8-9.)

### a. The Requirement for "Conspicuous" and "Plain and Clear" Terms Applies Only to Insurance Contracts

Plaintiff asserts that a term in an adhesion contract must be "conspicuous," and "plain and clear" to be enforceable and argues that the UPS contract fails to meet those standards. (Pl.'s

---

(Footnote continued from previous page.)

that did not carry an immediately visible notice of the existence of license terms or require unambiguous manifestation of assent to those terms").

[3] Rather than the three factors Plaintiff identifies, the "reasonable communicativeness test" examines "the physical characteristics of the ticket" and "'the circumstances surrounding the passenger's purchase and subsequent retention of the ticket/contract.'" *Wallis*, 306 F.3d at 836 (citation omitted). Again, the test has no applicability to the agreement at issue here.

Opp'n at 8-9, 12-18.) Those are "[s]pecial rules of construction and interpretation" that apply only to insurance contracts. *Dominguez v. Fin. Indem. Co.*, 183 Cal. App. 4th 388, 396 (2010); *see also Haynes v. Farmers Ins. Exch.*, 32 Cal. 4th 1198, 1210 (2004) ("For nearly a hundred years we have recognized that the rule presuming parties are familiar with contract terms should not be strictly applied to insurance policies.") (internal quotation marks omitted). Thus, in that specific context only, "[i]t is the insurer's burden to make its coverage exclusions and limitations conspicuous, plain and clear." *Dominguez*, 183 Cal. App. 4th at 396; *Haynes*, Cal. 4th at 2004 (same). Plaintiff has not identified—nor could UPS find—any case suggesting these "[s]pecial rules" apply in any other context. Plaintiff does not, and could not, contend that the UPS My Choice agreement was an insurance contract. Thus, Plaintiff's arguments that the agreement failed to meet these standards are irrelevant.

Even though these rules do not apply, Plaintiff's arguments about supposed lack of clarity and conspicuousness lack merit in any event. First, Plaintiff points to the fact that, in signing up for UPS My Choice, members are required to agree to both the UPS My Choice Service Terms *and* UPS's Technology Agreement (which Plaintiff notes is "long" and contains its own forum selection provision). The two agreements cover different things. The Technology Agreement provides a license to use UPS's technology; it does not govern the UPS My Choice services. The Technology Agreement specifically states that the forum selection provision applies to "any claim, case, or controversy *arising out of or relating to this [a]greement*." (Decl. of Adam W. Hansen Ex. B § 12.6, Jan. 18, 2017, ECF No. 29-3 (emphasis added).) By its terms, then, the forum selection provision applies only to disputes that arise *out of or relate to* the Technology Agreement (i.e., disputes over licensing). Moreover, the Technology Agreement also recognizes that separate agreements between UPS and the user will apply and govern the use of UPS's transportation services. It expressly states, for example, that the "use of UPS services accessed through the UPS Technology . . . *is pursuant to those agreements You have entered into with [UPS] related to such UPS [s]ervices*," thereby plainly identifying that other terms govern the use of UPS's services. (*Id.* at "End User Rights" p. 1 (emphasis added).) The UPS My Choice Service Terms, in turn, govern the UPS My Choice Service, and require that individuals agree to

be bound by the UPS Terms as a condition to becoming a UPS My Choice member and obtaining the benefit of the services provided by UPS.

Despite Plaintiff's suggestion to the contrary, the UPS My Choice Service Terms make more than a "vague reference" (Pl.'s Opp'n at 14) to the UPS Terms. The entire first paragraph of the UPS My Choice Service Terms is focused on "Governing Terms" and states that "You expressly acknowledge having reviewed, understood and agreed to the UPS Tariff/Terms and Conditions of Service and the UPS Rate and Service Guide and accept their application." (Calderon Decl. Ex. A ¶ 1.) The same paragraph explains the UPS Terms are published on ups.com. (*Id.*) Given that plain language, any reasonable reader would know that the UPS Terms apply and could be accessed at ups.com. (*Id.*)

Second, Plaintiff's reliance on *Chan v. Drexel Burnham Lambert*, 178 Cal. App. 3d 632 (1986), is misplaced. The plaintiff in *Chan* was employed at a brokerage firm, and signed a uniform application to register with securities exchanges. That document included the language "I agree to abide by the Statute(s), Constitution(s), Rule(s) and By-Laws as any of the foregoing are amended from time to time of the agency jurisdiction or organization with or to which I am filing or submitting this application." *Id.* at 636. The plaintiff was to submit that application for registration with several different exchanges. One such exchange had a rule requiring arbitration of certain disputes. The court refused to compel arbitration, not because multiple documents were incorporated by reference, but because the document the plaintiff signed did not "clearly and unequivocally" reference "The New York Stock Exchange Guide-Rules of Board-Offices and Employees," which contained the rule requiring arbitration. *Id.* at 642-44 (emphasis omitted). The court explicitly distinguished cases where, as here, the arbitration provision was "not set forth on the face of the contract, [but] the contract clearly referred to and identified the incorporated document wherein the arbitration clause appeared." *Id.* at 642. Given their plain language, Plaintiff cannot dispute that the UPS My Choice Service Terms clearly and unequivocally reference the UPS Terms.

Third, the subsequent amendment to the UPS My Choice Service Terms cannot be used as evidence that prior versions of the terms were inadequate. Courts routinely recognize that

subsequent modifications to contract language should not be used to interpret an earlier version of the contract. In *Pastor v. State Farm Mutual Automobile Insurance Co.*, 487 F.3d 1042, 1045 (7th Cir. 2007) (Posner, J.), for example, State Farm clarified subsequent versions of a policy to make explicit that the term "day" meant 24 hours. The plaintiff sought to use this change as an admission that the term had a different meaning in prior versions of the policy. Judge Posner rejected this argument, holding that "[o]bviously it is not a confession." *Id.* at 1045. Moreover, the court held, "to use at a trial a revision in a contract to argue the meaning of the original version would violate Rule 407 of the Federal Rules of Evidence, the subsequent-repairs rule, by discouraging efforts to clarify contractual obligations[.]" *Id.* Here too, UPS's 2015 clarification is not—and cannot be construed as—an admission that the prior version was somehow legally insufficient. UPS should not be penalized for its efforts to enhance its services and make the parties' corresponding obligations even more clear and plain. The version of the UPS My Choice Service Terms Plaintiff accepted expressly incorporated the UPS Terms in their entirety by reference and stated that the UPS My Choice member had read the UPS Terms and agreed to be bound by them. As shown, that is more than sufficient to create an enforceable agreement.

**b.      There Is No Obligation to Affirmatively Bring an Arbitration Provision to a Consumer's Attention or Explain It**

Plaintiff argues that UPS was required to affirmatively bring the arbitration provision to consumers' attention and explain it. (Pl.'s Opp'n at 9, 18-19.) That argument contradicts the California Supreme Court's holding that a defendant is "under no obligation to highlight the arbitration clause of its contract, nor [is] it required to specifically call that clause to [the plaintiff's] attention." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 914 (2015). That rule applies whether the arbitration provision is in the contract itself or in documents incorporated by reference. *See, e.g.*, *Wolschlager v. Fidelity Nat'l Title Ins. Co.*, 111 Cal. App. 4th 784, 791 (2003) (rejecting argument that plaintiff was not bound by arbitration clause set forth in separate insurance policy incorporated in contract by reference; "[t]here is no authority requiring the defendant to specify that the incorporated document contains an arbitration clause in order to make the incorporation valid"); *Lucas v. Hertz Corp.*, 875 F. Supp. 991, 998-99 (N.D. Cal.

2012) (plaintiff bound by arbitration provision where he accepted rental car agreement that incorporated separate document with arbitration provision, even where rental agreement was silent about arbitration and plaintiff claimed he did not receive separate document); *Koffler Elec. Mech. Apparatus Repair, Inc. v. Wärtsilä North Am., Inc.*, No. C-11-0052 EMC, 2011 WL 1086035, at *3-4 (N.D. Cal. Mar. 24, 2011) (arbitration provision in document incorporated in purchase order was enforceable where copy was available by request, even though clause was not brought to plaintiff's attention).

These cases apply or are consistent with the general rule under California law that "one who accepts or signs an instrument, which on its face is a contract, is deemed to assent to all its terms," which has been consistently applied to enforce arbitration provisions of which a plaintiff claimed to be unaware. *Chico v. Hilton Worldwide, Inc.*, No. CV-14-5750-JFW (SSx), 2014 WL 5088240, at *6 (C.D. Cal. Oct. 7, 2014) (enforcing arbitration agreement where plaintiff did not speak the language in which the contract was written); *see also Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) (under California law, "an offeree, knowing that an offer has been made to him but not knowing all of its terms, may be held to have accepted, by his conduct, whatever terms the offer contains") (internal quotation marks omitted); *Youssofi v. Wells Fargo Bank*, No. 16cv1330-MMA (JMA), 2016 WL 7404522, at *2 (S.D. Cal. Dec. 21, 2016) (enforcing arbitration provision where plaintiff did not understand what arbitration was); *Moule v. United Parcel Serv. Co.*, No. 1:16-cv-00102-JLT, 2016 WL 3648961, at *7 (E.D. Cal. July 7, 2016) (enforcing arbitration provision in UPS Terms and holding that "[u]nder California law, Plaintiff cannot avoid the terms of a contract by asserting a representative failed to read the UPS Terms when provided with an opportunity to do so, or that he does not recall receiving notice of the UPS Terms"); *Han v. Samsung Telecomms. Am., LLC*, No. CV-13-3823 GW (AJWx), 2013 WL 7158044, at *4 (C.D. Cal. Dec. 16, 2013) (enforcing choice of law and arbitration provision and holding that "a party generally cannot avoid the terms of a contract on the ground that he or she failed to read it before signing") (internal quotation marks omitted).

To the extent courts recognize any duty under California law to affirmatively highlight and explain a particular term, they have done so under circumstances that have no application

here.  For example, Plaintiff cites cases that have not applied the general rule that parties are bound by contractual provisions of which they are unaware where the "contractual provisions . . . [were] contained in a document whose contractual nature is not obvious." *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 993 (1972); *see also Specht*, 306 F.3d at 30 (no contract formed with respect to "undisclosed term" only where "the writing does not appear to be a contract").  That exception does not apply here because Plaintiff was presented with unambiguous notice that contractual terms applied, and he had to click to manifest his assent to those terms.  Plaintiff has made no argument that the contractual nature of the UPS My Choice agreement was not obvious.  His argument here is simply that he did not have knowledge of the specific terms contained in that agreement, which is not a valid basis to avoid enforcement.

Plaintiff cites *Bruni v. Didion* for the proposition that the general rule does not apply to adhesion contracts.  160 Cal. App. 4th 1272, 1291 (2008).  That proposition was squarely overruled by the California Supreme Court in *Sanchez* and is contrary to the host of subsequent opinions applying the general rule to adhesion contracts.  61 Cal. 4th at 914-15 (it is "unreasonable . . . to neglect to read a written agreement before signing it") (internal quotation marks omitted); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 910 (N.D. Cal. 2011) (rejecting argument that general rule did not apply to adhesion contract); *Tompkins*, 2014 WL 2900375, at *8 (it is "clear" that "a party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing" adhesion contract) (internal quotation marks omitted).

## C.    Plaintiff Fails to Refute That, in Addition to His Direct Agreement, He Is Required to Arbitrate Through Principles of Equitable Estoppel

Plaintiff seeks to benefit from the price terms in the shipping contract between UPS and The UPS Store location that governed the shipment of his package, while avoiding the arbitration term in that contract.  As UPS showed, Plaintiff is equitably estopped from selectively enforcing some terms of the contract and discarding others.  (Def.'s Mot. at 13-15.)  Plaintiff fails to refute that he is obligated to arbitrate his claims on this additional, independent ground.

As Plaintiff concedes, courts in California recognize that, under principles of equitable estoppel, a non-signatory to a contract will be bound by an arbitration provision in a contract

where his claims depend upon or are inextricably intertwined with that contract's terms. (Pl.'s Opp'n at 22; Def.'s Mot. at 13-15.) In particular, where a "claim . . . relies on contract terms," courts recognize that it would be inequitable to allow a party to benefit from certain terms, yet "repudiat[e]" the obligation to arbitrate imposed by the same contract. *JSM Tuscany*, 193 Cal. App. 4th at 1239-40. That doctrine squarely applies here because Plaintiff's claims all seek to hold UPS liable for allegedly failing to comply with the pricing terms set forth in the UPS Guide—which are part of the shipping contract.[4] As UPS showed, every one of Plaintiff's claims is based on the alleged impropriety of charging a Delivery Area Surcharge above the price set forth in the UPS Guide. (Def.'s Mot. at 14.)[5]

Plaintiff does not deny that all of his claims rise and fall on the meaning of the UPS Guide—a document so central to his claims that a copy is attached to the Complaint. (Compl. Ex. C.) He does not even deny that he is trying simultaneously to enforce pricing terms in the shipping contract but avoid other terms he dislikes. Instead, Plaintiff argues that the equitable estoppel doctrine does not apply because he did not allege an express breach of contract claim. (Pl.'s Opp'n at 22.) Plaintiff is wrong. As *JSM Tuscany* shows, the relevant question is whether a claim *relies* on contract terms, not the type of claim alleged. 193 Cal. App. 4th at 1239. In fact, *JSM Tuscany* rejected the very position Plaintiff advances here, stating: "[W]e believe that there is no rational basis to limit this conclusion to claims expressly based on the breach of the [contract]." *Id.* at 1241. Indeed, the court recognized that some of the tort and statutory claims in

---

[4] The UPS Terms incorporate the UPS Guide by reference. (Liberatore Decl. Ex. A §§ 1, 55 (incorporating UPS Guide into the Terms).) Courts thus routinely recognize that UPS's shipping contract is comprised of the UPS Terms, the UPS Guide, and the source document for a particular shipment (*i.e.*, the document used to tender a package). *See, e.g.*, *Kesel v. United Parcel Serv., Inc.*, 339 F.3d 849, 852 (9th Cir. 2003) (UPS General Tariff, UPS Guide, and waybill); *Sivak v. United Parcel Serv. Co.*, 28 F. Supp. 3d 701, 705 (E.D. Mich. 2014) (UPS Terms, Guide, and Source Document). Plaintiff nowhere disputes that he was aware of the UPS Terms and the UPS Guide (and even attached them to his Complaint). Plaintiff does dispute that he received a copy of the Parcel Shipping Order, but UPS relied on the Parcel Shipping Order merely as additional evidence that Plaintiff had notice of the UPS Terms. (*See* Def.'s Mot. at 13.)

[5] UPS showed that Plaintiff's claims also rely on additional contractual provisions allegedly agreed upon between UPS and The UPS Store location, such as the billing software retailers use and what they are supposed to charge for the Delivery Area Surcharge, and are therefore inextricably intertwined with the shipping contract for that additional reason. (*See* Def.'s Mot. at 14-15.) Plaintiff offers no response.

that case should be resolved in arbitration because they were based on "obligations created by the [contract]." *Id.* at 1232-33 & n.14, 1242. To the extent there was an open question as to whether the remaining claims should be sent to arbitration, it was because those claims were claims for breach of a separate contract that did not contain an arbitration provision. *Id.* at 1242-43. What mattered was not the type of claim, but whether it depended on or was inextricably intertwined with the contract containing an arbitration provision.[6]

None of Plaintiff's other cited cases support a categorical exclusion. Those cases recognized that the claims at issue did not depend upon, or even reference any terms in, the contract that contained an arbitration provision. *See DMS Servs., Inc. v. Superior Court*, 205 Cal. App. 4th 1346, 1355, 1357 (2012) (complaint never even mentioned terms in contract that contained arbitration provision); *Crowley Maritime Corp. v. Boston Old Colony Ins. Co.*, 158 Cal. App. 4th 1061, 1067 (2008) (declining to compel arbitration of equitable contribution claim that did not rely or depend on interpretation of contract containing arbitration provision, but recognizing estoppel could apply to other equitable claims, such as subrogation). Instead, the existence of the contract containing an arbitration provision was merely a background fact.

Where, as here, a plaintiff's claims rely on a contract's terms, courts have readily applied *JSM Tuscany* to require arbitration of RICO claims, other statutory claims, and various common law claims, based on estoppel under California law. *See, e.g.*, *Xinhua Holdings Ltd. v. Elec. Recyclers Int'l, Inc.*, No. 1:13-CV-1409 AWI SKO, 2013 WL 6844270, at *9-10 & n.8 (E.D. Cal. Dec. 26, 2013) (non-signatory required to arbitrate RICO and other non-contract claims where "an examination of the terms of the [contract] itself" and circumstances of formation would "likely be necessary"); *Tamsco Props., LLC v. Langemeier*, No. 2:09-cv-03086-GEB-EFB, 2013 WL 246782, at *5-7 (E.D. Cal. Jan. 22, 2013) (non-signatory required to arbitrate fraud, breach of

---

[6] Plaintiff relies on a footnote in *JSM Tuscany* that merely recognized that, depending on the particular allegations of a given case, some claims do not rely on the terms of a contract with an arbitration provision. 193 Cal. App. 4th at 1240 n.20. Plaintiff also misconstrues *Goldman* by suggesting that the court limited the doctrine of equitable estoppel "only to claims made by closely-related entities that are based on breaches of the same underlying contract containing the arbitration clause" (Pl.'s Opp'n at 21)—the decision contains no such limitation. *See Goldman v. KPMG LLP*, 173 Cal. App. 4th 209, 221 (2009).

fiduciary duty, and unlawful/unfair business practices claims where claims were "based upon alleged obligations related to Defendant's performance under the [agreement containing arbitration provision]"); *City of Riverside v. Mitsubishi Heavy Indus., LTD*, No. 13-CV-1724-BEN (KSC), 2014 WL 1028835, at *2, *3-4 (S.D. Cal. Mar. 14, 2014) (non-signatory bound by arbitration provision because all claims, including claims for concealment, misrepresentation, and negligence, were "based upon" contract obligations).  This Court should do the same.[7]

## II. PLAINTIFF FAILS TO REFUTE THAT HIS CLAIMS ARE WITHIN THE SCOPE OF THE ARBITRATION AGREEMENT IN THE UPS TERMS

Plaintiff does not contest that, under the plain language of the UPS Terms, claims challenging UPS's transportation charges fall squarely within the scope of the arbitration provision, which requires arbitration of any dispute "arising out of or related to the provision of services by UPS."  (Def.'s Mot. at 15-16; Liberatore Decl. Ex. A § 52.)  Plaintiff's claims are within that broad scope.

Plaintiff suggests that, despite the provision's broad language, the UPS My Choice Service Terms should be interpreted to limit arbitration to disputes over package *deliveries*, not shipments, because UPS My Choice is a service focused on package deliveries.  (Pl.'s Opp'n at 17-18.)[8]  The arbitration provision itself makes clear that it applies to "any controversy or claim" provided that it "aris[es] out of or relate[s] to the provision of services by UPS."  (Liberatore Decl. Ex. A § 52.)  By its plain terms, the arbitration provision is not limited to claims arising out of a particular agreement or related to a particular shipment or service.

---

[7] Plaintiff also asserts that he would need to have an agency or "close" relationship with The UPS Store location in order to be bound by the retailer's contract with UPS.  (Pl.'s Opp'n at 24.)  But the *JSM Tuscany* court did not require such a relationship and instead recognized that a close relationship between the parties can supply a *separate* basis to bind a non-signatory to an arbitration agreement.  193 Cal. App. 4th at 1240.  In any event, Plaintiff had a close relationship with The UPS Store location in that he paid the store to ship his package with UPS according to his instructions and, with Plaintiff's authorization, the store entered into a shipping contract with UPS on Plaintiff's behalf.  (*See* Def.'s Mot. at 8, 13-15; Liberatore Decl. ¶ 13.)  Because Plaintiff seeks to benefit from that shipping contract, it makes perfect sense that he should be bound by its obligations, just as the store would be had it pursued Plaintiff's complaint directly with UPS.

[8] Plaintiff's arguments to limit the scope of the arbitration provision apply only to his direct agreement with UPS as a result of his UPS My Choice membership.  They have no application to The UPS Store location's agreement to arbitrate, which binds Plaintiff through principles of estoppel.

It is not at all uncommon for parties to agree to arbitrate more than those disputes that arise directly out of the agreement containing the arbitration provision, and courts routinely enforce such agreements according to their terms. *See, e.g.*, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011) (noting that contract provided for "arbitration of all disputes between the parties"); *ARW Expl. Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995) (provision requiring arbitration of "all disputes," including "any matter . . . not provided for in this agreement" covered dispute arising out of separate agreement that did not contain arbitration provision) (internal quotation marks omitted). For example, the UPS Terms' arbitration provision has been held to require arbitration of a dispute over packaging material sold by UPS *before* plaintiff shipped and accepted the UPS Terms. (Reply Decl. of Stacey M. Sprenkel, Ex. A-2, Transcript from H'rg on Def.'s Mot. to Compel Arbitration at 22:22-23:8, 23:24-24:15, Aug. 20, 2015, *Simoni v. United Parcel Serv., Inc.*, No. 14-cv-4374-PGS-DEA (D.N.J.); *id.* Ex. A-1, Order on Def.'s Mot. to Compel Arbitration, Aug. 20, 2015, *Simoni*, No. 14-cv-4374-PGS-DEA, ECF No. 20) (adopting ruling read into the record).)

Plaintiff relies on *Knutsun*, (Pl.'s Opp'n at 18), but that case never addressed the scope of an arbitration provision. The question was whether the plaintiff entered into a contract with a third party, Sirius XM, by purchasing a car from Toyota that had satellite radio installed. Because nothing in the interaction with Toyota would have put the plaintiff on notice that he also was entering into a separate contract with Sirius XM (which included an arbitration agreement), the court held that no such agreement was formed. 771 F.3d at 566, 570. The case lends no support whatsoever to Plaintiff's untenable theory that an agreement to arbitrate "any" dispute "arising out of or related to the provision of services by UPS" can be read to apply only to disputes "arising out of or related to" UPS My Choice services. That reading cannot be squared with the plain language of the arbitration provision.

Put simply, Plaintiff voluntarily signed up for a service that offered him many conveniences free of charge. In doing so, he was informed that applicable terms applied and he clicked to indicate his acceptance of those terms. Among the applicable terms is an arbitration provision, which provides that (1) the shipper can elect to pursue smaller claims such as this one

in small claims court, (2) the shipper can initiate arbitration in his or her state and county of

residence, and (3) UPS will pay all filing fees that exceed a consumer's fee to file a complaint in

a court. (*See* Liberatore Decl. Ex. A § 52.) Plaintiff should not now be permitted to avoid the

arbitration provision because he fails to recall that he signed up for UPS My Choice or because he

failed to review the contract to which he agreed to be bound.

### III. THE COURT SHOULD COMPEL ARBITRATION AND STAY THE PROCEEDINGS

As UPS argued in its Motion, this Court should compel arbitration of all claims, to take

place in Sonoma County. Pursuant to section 3 of the FAA, the Court should then stay the

proceedings pending arbitration. *See, e.g.*, *Buchla v. Buchla Elec. Musical Instrument, LLC*, No.

15-cv-0921-HSG, 2015 WL 4463695, at *4 (N.D. Cal. July 21, 2015) (compelling arbitration of

all claims and entering stay); *McIntosh v. Adventist Health/W. St. Helena Hosp.*, No. C 12-05589

PJH, 2013 WL 968293, at *10 (N.D. Cal. Mar. 12, 2013) (compelling arbitration of all claims,

entering stay, and closing file for administrative purposes subject to reopening to enforce award).

### CONCLUSION

For the reasons set forth in UPS's Motion and herein, this Court should compel Plaintiff to

arbitrate his claims, as he agreed to do, in Sonoma County and stay the proceedings while the

parties pursue arbitration.

Dated: February 1, 2017
STACEY M. SPRENKEL
MORRISON & FOERSTER LLP

By: */s/ Stacey M. Sprenkel*
STACEY M. SPRENKEL

Attorneys for Defendant
UNITED PARCEL SERVICE, INC.

1                                 **CERTIFICATE OF SERVICE**

2          The undersigned hereby certifies that on the 1st day of February, 2017, the foregoing

3 document was filed electronically on the CM/ECF system, which caused all CM/ECF participants

4 to be served by electronic means.

5

6                                           */s/ Stacey M. Sprenkel*
                                          STACEY M. SPRENKEL

7                                           Attorneys for Defendant

8                                           UNITED PARCEL SERVICE, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28